IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES     :    CRIMINAL ACTION
            :
   v.        :    NO. 09-155-6
            :
CARLOS R. MARTINEZ   :
            :

## OPINION

**Slomsky, J.**               **May 25, 2012**


## I.  INTRODUCTION

Defendant Carlos R. Martinez has filed a Coram Nobis Petition to Vacate Guilty Plea, Specifically Relating to the Charge of [18 U.S.C. §] 924(c) (Doc. No. 445) and a Reply, which includes a Motion to Withdraw His Guilty Plea Pursuant to Federal Rule of Criminal Procedure 11(d) (Doc. No. 456).  On May 9, 2012, the Government filed a Response in Opposition.  (Doc. No. 448.)  After considering the arguments made in the briefs of the parties and the record in this case, the Court will deny Defendant's Coram Nobis Petition (Doc. No. 445) and Motion to Withdraw his Guilty Plea (Doc. No. 456).

## II.  BACKGROUND

On April 28, 2010, a grand jury returned a Superceding Indictment (Doc. No. 9) charging Defendant in two (2) counts with the following offenses:

  (1)  Conspiracy to commit murder in aid of racketeering, in violation of
      18 U.S.C. § 1959(a)(5), and

  (2)  Aiding and abetting the use and carry of a firearm during a violent crime, in
      violation of 18 U.S.C. §§ 924(c) and 2.

On June 14, 2011, Defendant entered a plea of guilty to both offenses pursuant to a written plea agreement.  (Doc. No. 350.)  On May 1, 2012, almost eleven months after his guilty plea and prior to sentencing on the two charges, Defendant filed the instant Coram Nobis Petition to Vacate Guilty Plea, Specifically Relating to the Charge of [18 U.S.C. §] 924(c).  (Doc. No. 445.)  As noted, on May 9, 2012, the Government filed a Response in Opposition.  (Doc. No. 448.)  On May 21, 2012, Defendant filed a Reply, which includes a Motion to Withdraw his Guilty Plea Pursuant to Federal Rule of Criminal Procedure 11(d).  (Doc. No. 456.)[1]

For reasons discussed below, the Court will deny Defendant's Coram Nobis Petition (Doc. No. 445) and Motion to Withdraw His Guilty Plea (Doc. No. 456).

## III.   DISCUSSION

### 1.   Motion to Withdraw Guilty Plea

Defendant seeks to withdraw his guilty plea and raises this request in his Reply amending his initial Petition.  (Doc. No. 456.)  This new Motion is made pursuant to Fed. R. Crim. P. 11(d).  For reasons that follow, the Motion to Withdraw the Guilty Plea will be denied.

"A defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence . . . if the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  The burden is on the defendant to prove a fair and just reason.  United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003).  "A simple shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to force the government to incur the expense, difficulty, and risk of trying a defendant, who has

_____

[1] In the Government's Response, they discuss whether a withdrawal of the guilty plea would be warranted under Fed. R. Crim. P. 11(d).  (Doc. No. 448 at 5.)  Thus, this issue is ripe for disposition.

already acknowledged his guilt before the court." United States v. Jones, 979 F.2d 317, 318 (3d

Cir. 1992), *superseded by statute on other grounds as stated in*, United States v. Roberson, 194

F.3d 408, 417 (3d. Cir. 1999).  See also United States v. Brown, 250 F.3d 811, 815 (3d Cir.

2001).  When evaluating a motion to withdraw a guilty plea, a court must consider: 1) whether

the defendant asserts his innocence; 2) defendant's reasons to withdraw his plea; and 3) the

prejudice the government would incur by the withdrawal.  Brown, 250 F.3d at 815.

On June 14, 2011, the Court held a hearing at which Defendant entered his guilty plea.

The plea was made pursuant to a written plea agreement in which Defendant agreed to, *inter alia*,

enter a plea to Count V charging him with use and carry of a firearm during a violent crime, in

violation of 18 U.S.C. § 924(c), and aiding and abetting, in violation of 18 U.S.C. § 2.  At the

hearing, the Court questioned Defendant, and the Government proffered evidence that would

have been introduced if the case had gone to trial.  The transcript reveals the following facts

which concern Defendant's Motions here:

| | |
|---|---|
| The Court: | Are you feeling alright today? |
| Defendant: | Yes. |
| The Court: | Do you understand that you're in court today . . . to enter a guilty plea in this case? |
| Defendant: | Yes, I do. |
| The Court: | All right. And have you been able to hear and understand me all right? |
| Defendant: | Yes. |
| The Court: | Have you received a copy of the superseding indictment? |
| Defendant: | Yes, I have. |
| The Court: | And have you read it? |
| Defendant: | Yes. |
| The Court: | And has your lawyer explained the nature and elements of the charges against you and fully explained your trial rights and defenses? |
| Defendant: | Yes, he has. |
| The Court: | Are you fully satisfied with the representation of your lawyer? |
| Defendant: | I am. |

3

(Transcript of Hearing, June 14, 2011, ("H'rg Tr. June 14, 2011") 7:2-21.)

                                *                *                *

| | |
|---|---|
| The Court: | . . . Now, did you read the guilty plea before you signed it? |
| Defendant: | Yes, I did. |
| The Court: | And did you voluntarily sign the plea agreement? |
| Defendant: | I did. |
| The Court: | And did Mr. Cameron [Defense Counsel] fully explain to you the terms of the written plea agreement? |
| Defendant: | Yes, he did. |
| The Court: | Have you had enough time to talk over the plea agreement with your lawyer? |
| Defendant: | I have. |

(H'rg Tr. June 14, 2011, 8:12-9:1.)

                                *                *                *

| | |
|---|---|
| The Court: | Now, in Count V, you're charged with using and carrying a firearm during a violent crime.  Do you understand? |
| Defendant: | Yes. |

(Id. at 36:13-16.)

                                *                *                *

| | |
|---|---|
| The Court: | . . . Now, in order to prove you guilty of this offense [Count 5], the government would have to establish at trial beyond a reasonable doubt the following elements.  That you committed a crime of violence for which you can be prosecuted in a court of the United States, here conspiracy to commit murder; and that you aided and abetted the using or carrying of a firearm during or in relation to the commission of that crime of violence; and you did so knowingly.  Do you understand? |
| Defendant: | Yes. |
| The Court: | All right.  Now, this count also charges a violation of 18 United States Code Section 2.  Do you see 2 at the very end? |
| Defendant: | Yes. |
| The Court: | 18 United States Code Section 2 is what we call the aiding and abetting statute.  In other words, if you aid and abet or procure someone else to commit a crime, then under federal law, you can be equally responsible and punishable.  We call you a principal.  Do you understand? |
| Defendant: | Yes. |
| The Court: | All right.  But you just have to have the same object in your mind as the |

|                | person who does the offense, and then you can be equally guilty of aiding and abetting.  Do you understand? |
| Defendant:     | Yes.            |
| The Court:     | All right.  Do you have any questions about what aiding and abetting is – |
| Defendant:     | No.             |

(H'rg Tr. June 14, 2011, 37:9-38:16.)

*                    *                    *

| The Court:     | All right.  Now, at this point, I am going to ask government counsel [Mr. Weber] to recite the fact[s] which the government contends it would prove beyond a reasonably doubt, if you were to go to trial.  I'd like you to listen carefully to what Mr.Weber says, because when he's finished, I'm going to ask you if that is what happened, and if you did what the government says you did . . . . |

(Id. at 38:23-39:4.)

*                    *                    *

| Mr. Weber:     | At trial, the government would establish beyond a reasonable doubt that on or about March 17, 2004 through on or about March 18, 2004, the defendant was approached by leadership members of the Philadelphia and Bethlehem tribes of the Almighty Latin King and Queen Nation.  The defendant was advised by other members that as part of his membership and oath to the Almighty Latin King and Queen Nation, he was ordered to travel to New Jersey on a mission to attack and kill other gang members who were commissioned to be enemies of the Almighty Latin King and Queen Nation. |
|                | The defendant agreed to participate in this attack.  The defendant traveled from Bethlehem with numerous other members of the Bethlehem Sun Tribe, first to Philadelphia, and then to Vineland, New Jersey, where their intended victims would be confronted. |
|                | The defendant and his fellow members of the Almighty Latin King and Queen Nation brought and possessed the firearms and other weapons which they intended to use kill the intended victims.  The attack was prevented, however, when law enforcement officers had been tipped off and intercepted approximately two dozen members of the Almighty Latin King and Queen Nation in Vineland, New Jersey, including this defendant, and recovered numerous operable and loaded firearms. |
|                | Specifically in this case, there were approximately four semiautomatic handguns, a .38 caliber revolver, and one bulletproof vest that was actually seized . . . . |

5

(H'rg Tr. June 14, 2011, 40:15-41:16.)

                *                     *                *

| | |
|---|---|
| The Court: | . . . Mr. Martinez, did you hear what the attorney for the government said the government would show at trial? |
| Defendant: | Yes. |
| The Court: | Is that what happened? |
| Defendant: | Yes. |
| The Court: | And do you admit to all those facts? |
| Defendant: | Yes. |
| The Court: | And you did what the government says you did? |
| Defendant: | Yes. |

(Id. at 42:2-12.)

Despite Defendant's agreement with the Government's recitation of the facts at the June 14, 2011 hearing, Defendant now argues that he did not use or carry a weapon at the time of the offense and that the charge of use or carry of a firearm in furtherance of a violent crime is unjustified.  Defendant had the opportunity to argue he did not use or carry the weapon at issue and contest the gun charge well before or during the June 14, 2011 hearing.  He did not do so until he filed the instant Petition for a Writ of Coram Nobis on May 9, 2012, almost eleven months after the June 14, 2011 guilty plea hearing.  (Id.)

Defendant has not shown that a withdrawal of his guilty plea is warranted.  First, a defendant seeking to withdraw his guilty plea cannot merely claim he is innocent.  He must allege facts proving his innocence.  Brown, 250 F.3d at 818.  Here, Defendant alleges that he "did not use or carry or brandish a firearm during this Vineland, New Jersey incident, where he had no knowledge of the purpose of the trip, and said gun charges were accepted fully by co-defendants, Neftali Colon and Johnny Santana."  (Doc. No. 445 at 4.)  Although this claim is an apparent assertion of his innocence of the charge of the use and carry of a firearm during a

violent crime, it is undermined by the facts elicited at the guilty plea hearing where Defendant

agreed without equivocation that he was guilty of at least aiding and abetting the same charge.

Defendant argues that he never actively possessed the firearm at issue and therefore never

actively used or carried it and for this reason is innocent of the gun charge.[2]   (Doc. No. 445 at 4-

5.)  This argument fails to recognize that Defendant was charged as an aider and abettor in the

gun count and there is sufficient evidence to show his guilt as an aider and abettor.  An aider and

abettor need not physically handle a weapon so long as his criminal activity was "intertwined

with" and "furthered by" his co-defendants' actions.  United States v. Gordon, 290 F.3d 539, 547

(3d Cir. 2002) ("Although mere knowledge [of a weapon] is not enough to convict, we have held

that a defendant can be convicted of aiding and abetting a violation of § 924(c)(1) without ever

possessing or controlling a weapon if the defendant's actions were sufficiently 'intertwined with,

and his criminal objectives furthered by' the actions of the participant who did carry and use the

firearm.") (citation omitted).  While Defendant may not have physically touched the firearm at

issue, he agreed to partake in a "mission" to "attack and kill" enemies of the Almighty Latin

---

[2] In support of this argument, Defendant cites United States v. Bailey, 516 U.S. 137
(1995), where the Supreme Court held that a defendant charged with using and carrying a firearm
must "actively employ" that weapon.  Id. at 143.  In 1998, Congress amended § 924(c)(1)(A) to
also make it a crime to possess a firearm in furtherance of a crime of violence or drug trafficking
crime.  18 U.S.C. § 924(c)(1)(A).  See also United States v. Walker, 657 F.3d 160, 173 n.10 (3d
Cir. 2011).  This amendment was added to overturn Bailey to the extent that possession now
became an offense under § 924(c).  However, "uses or carries" a firearm in furtherance of a crime
of violence or drug trafficking crime is still an offense under § 924(c)(1)(A).  Thus, § 924(c) now
punishes possession or use or carry of a firearm in furtherance of certain offenses.
        In this case, the Government charged Defendant in Count V with the "use and carry"
element of § 924(c).  In accordance with Bailey, under a use and carry theory, the Government
would be required to show active employment of the firearm by either Defendant or by others
with the consent of Defendant under an aiding and abetting or conspiracy theory.  The
Government has made such a showing here.

King and Queen Nation through the use of firearms, which is sufficient to establish an aiding and abetting offense in violation of 18 U.S.C. § 924(c).

As noted, a defendant seeking to withdraw a guilty plea also has the burden of proving a fair and just reason for seeking the withdrawal.  United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003).  When examining a fair and just reason for the withdrawal, the Third Circuit has held that a mere change in defense tactics or a defendant's fear of punishment are not adequate reasons to withdraw a guilty plea.  United States v. Jones, 979 F.2d 317, 318 (3d Cir. 1992), *superseded by statute on other grounds as stated in*, United States v. Roberson, 194 F.3d 408, 417 (3d Cir. 1999).  Here, Defendant has supplied no reason to withdraw his guilty plea other than his assertion of innocence.  He waited eleven months after he entered the guilty plea pursuant to a written plea agreement to move to withdraw it.  The obvious reason for the Motion at this late date is because Defendant realizes that the plea to the gun charge has an impact on his sentence because it carries a mandatory minimum of five-years incarceration consecutive to any other sentence of incarceration.  18 U.S.C. §§ 924(c)(1)(A)(i), (c)(1)(D)(ii).   This realization is not an adequate reason to withdraw a guilty plea.

Finally, when evaluating a motion to withdraw a guilty plea, a court must examine the prejudice the government would incur by the withdrawal.  United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001).  In the Response to the Petition for a Writ of Coram Nobis, the Government states it "would certainly be prejudiced if [the guilty plea is withdrawn] . . . because the government will have to undergo 'the expense, difficulty and risks of trying a defendant.'" (Doc. No. 448 at 11.)  Beyond the typical expenses associated with trying a case, the Government also asserts that it would incur additional prejudice because, at the time of Defendant's guilty plea, the

Government had already prepared witnesses.  (Id.)  Further, some of those witnesses were co-

defendants, who have already been sentenced by this Court and now have less incentive to

cooperate with the Government.[3]  (Id.)  Finally, the Government's senior counsel, who worked

on the instant case for three years and has extensive knowledge of its intricacies, has since

retired.  (See id.)  Accordingly, it is evident that allowing Defendant to withdraw his guilty plea

would prejudice the Government.

Considering Defendant's extreme delay in asserting his innocence on the gun charge, his

failure to provide a sufficient reason for withdrawal of his guilty plea, and the prejudice to the

Government if a withdrawal of the guilty plea was granted, the Motion will be denied.  (Doc. No.

456.)  The facts noted here do not warrant a withdrawal of the guilty plea under Fed. R. Crim. P.

11(d).  No fair and just reason has been advanced to allow the guilty plea to be withdrawn in this

case.

2.      Petition for a Writ of Coram Nobis

Defendant also moves for a writ of coram nobis to vacate his guilty plea.  (Doc. No. 445.)

In United States v. Rhines, 640 F.3d 69 (3d Cir. 2011), the Third Circuit noted as follows

regarding a writ of coram nobis:

> Coram nobis is an extraordinary remedy that "has traditionally been used to attack
> [federal] convictions with continuing consequences when the petitioner is no longer
> 'in custody' for purposes of 28 U.S.C. § 2255."  United States v. Baptiste, 223 F.3d
> 188, 189 (3d Cir. 2000) (per curiam).  A court's jurisdiction to grant such relief is of
> limited scope, and the standard  for obtaining it is more stringent than that applicable
> on direct appeal or in habeas corpus.  See United States v. Stoneman, 870 F.2d 102,
> 106 (3d Cir. 1989).  Errors which could be remedied by a new trial do not usually

---

[3] This dilatory nature of the instant Motion may also be influenced by the fact that co-
defendants have been sentenced and have less interest in helping the Government convict
Defendant.  This kind of defense tactic is not a valid basis for withdrawal of a guilty plea.

come within the writ.  Id.  Rather, the error must be fundamental and "go to the jurisdiction of the trial court, thus rendering the trial itself invalid."  Id.  When an alternative remedy is available, a writ of error coram nobis may not issue.  See United States v. Denedo, 129 S. Ct. 2213, 2220 (2009).

Id. at 71.

Here, Defendant has failed to proffer evidence that would support the issuance of a writ of coram nobis.  At the outset, "coram nobis is usually reserved for situations where the petitioner is no longer serving his sentence or 'in custody.'"  Id.  Defendant has been incarcerated while awaiting his sentencing hearing scheduled for May 31, 2012.  (See Doc. No. 412.)

Moreover, Defendant has failed to allege facts at this stage of the case showing a continuing penalty he is subjected to, a fundamental error that a new trial would not correct, and a sound reason for failing to seek relief earlier.  Rhines, 640 F.3d at 71; United States v. Stoneman, 870 F.2d 102, 106 (3d. Cir. 1989).  No error of the most fundamental character has been shown here.  These are necessary preconditions that must be satisfied before the writ may be issued.  Accordingly, Defendant's Coram Nobis Petition to Vacate Guilty Plea, Specifically Relating to the Charge of [18 U.S.C. §] 924(c) (Doc. No. 445) will be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Petition for a Writ of Coram Nobis (Doc. No. 445) and Motion to Withdraw His Guilty Plea (Doc. No. 456) will be denied.  An appropriate Order follows.